UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
-----------------------------------------------------X
MILLIPORE CORPORATION,            )
        Plaintiff,                )
                                  )
                                  )
v.                                )        Civil Action No.  09-10765 DPW
                                  )
                                  )
W.L. GORE & ASSOCIATES, INC.,     )        Leave to file granted on August 30, 2010
        Defendant.                )
-----------------------------------------------------X
```

**GORE'S RESPONSE TO MILLIPORE'S SECOND SUPPLEMENTAL OPPOSITION
TO GORE'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

Millipore has filed a second supplemental opposition to Gore's motion for summary

judgment that introduces two new issues:  (1) the Federal Circuit's recent decision in *Intervet*

*Inc. v. Merial Ltd.*, --- F.3d ----, 2010 U.S. App. LEXIS 16104 (Fed. Cir. Aug. 4, 2010) and (2) a

new declaration from Millipore expert Dr. Alexander Slocum.  Neither helps Millipore.

*1. **Intervet** Does Not Change the DOE Analysis in This Case.*  *Intervet* confirms that

prosecution history estoppel applies to the "cap" limitation.  *Intervet* involves vaccines that

contain DNA from "porcine circoviruses"—or viruses having a circular genome that infects pigs.

2010 U.S. App. LEXIS 16104 at *3 & n.1.  There, the patentee amended the relevant claim

during prosecution to limit the literal scope of the claimed DNA to open reading frames

("ORFs") of "porcine circovirus type II" ("PCV-2") as opposed to ORFs from any organism or

porcine circovirus type I ("PCV-1").  *Id.* at *23-24.  In view of this amendment, the Federal

Circuit did not hesitate to apply *Festo* to bar DOE for two ORFs:

> The amendment thus raises a presumption of surrender for all equivalents that
> reside in the territory between the identified ORFs of PCV-2 and ORFs of PCV-1,
> as well as corresponding ORFs, if any, for any non-porcine organism. Merial *is*
> ***thus estopped*** from arguing that ORFs of pathogenic circoviruses found in other

organisms are equivalent to ORFs of PCV-2. It is also estopped from arguing that ORFs of a pathogenic strain of PCV-1 are equivalent to ORFs of PCV-2 . . . .

*Id.* at *24 (emphasis added).

The court then concluded that the amendment did not foreclose the plaintiff from asserting DOE against an accused vaccine that was ***more than 99% similar*** to PCV-2.  As the Federal Circuit explained:  "It was undisputed that Intervet's vaccine contained a nucleotide sequence that was ***99.7% homologous*** to one of the deposited [PCV-2] sequences."  *Id.* at *8 (emphasis added).  Thus, the Federal Circuit found:

> Merial is not, however, estopped from arguing that a pathogenic porcine viral sequence with ***over 99% nucleotide homology*** with one of the five representative strains is equivalent to that strain. Such a draconian preclusion would be ***beyond a fair interpretation of what was surrendered***.  The rationale for the amendment was to narrow the claimed universe of ORFs down to those of PCV-2, and bore only a tangential relation to the question of which DNA sequences are and are not properly characterized as PCV-2.

*Id.* at *24-25 (citations and footnote omitted) (emphasis added).

There are two critical points about *Intervet*.  First, *Intervet* affirmatively ruled that ***prosecution history estoppel barred DOE*** for the two aspects of the DNA limitation implicated by the amendment and rejected plaintiff's tangentiality arguments on those points.  *Id.* at *24.  Second, with respect to the "PCV-2 versus not PCV-2" aspect of the DNA limitation, the Federal Circuit found that it would be "draconian" to bar DOE when the accused equivalent was almost identical, i.e., more than 99% similar, to a covered PCV-2 strain.  *Id.* at *24-25.

In sum, *Intervet* stands for two unremarkable propositions.  First, prosecution estoppel will ordinarily bar DOE even in the face of tangentiality arguments.  *Id.* at *21-25.  Second, under the unique circumstances of that case—where the accused DNA was more than 99% similar to the claimed DNA—it would not have made sense to apply the *Festo* bar to the "PCV-2 versus not PCV-2" aspect of the limitation.  Rather, as the court stated, finding such an extreme

surrender would not have been a "fair interpretation" of the rationale for the amendment.  *Id.* at
*24-25.

      *Intervet*, therefore, does not change the law of tangentiality as set forth in Gore's
supplemental brief.  *See id.* at *20-25.  (*See also* 7/30/10 Gore Brief at 9-11.)  Nor could it.  *See*
*Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("This court has adopted the
rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless
and until overturned in banc.").  The Federal Circuit cases stating that the tangentiality exception
is "very narrow" apply with full force here.  *E.g.*, *Cross Med. Prods. v. Medtronic Sofamor*
*Danek, Inc.*, 480 F.3d 1335, 1342 (Fed. Cir. 2007).  So too do the cases that make clear that "the
tangential relation criterion focuses on the patentee's ***objectively apparent reason*** for the
narrowing amendment.  To rebut the estoppel presumption with tangentiality, a ***patentee must***
***demonstrate*** that the rationale underlying the amendment bore no more than a tangential relation
to the equivalent in question, or, in other words, that the narrowing amendment was peripheral,
or not directly relevant, to the alleged equivalent."  *Honeywell Int'l, Inc. v. Hamilton Sundstrand*
*Corp.*, 523 F.3d 1304, 1315 (Fed. Cir. 2008) (citations and quotations omitted) (emphasis
added).

      This creates a problem for Millipore—for which *Intervet* does not help.  Millipore cannot
meet its burden of "demonstrat[ing] that the rationale underlying the ["cap"] amendment bore no
more than a tangential relation to the equivalent in question."  *Id.*  There is only one statement in
the prosecution history that actually provides a ***rationale*** for Millipore's decision to add the
"cap" limitation: "Arthun fails to teach an elongate member as claimed.  Arthun uses a septum
that is pierced by a hypodermic needle to allow flow into the needle and then to the sample bag.
This is quite different from the device as claimed in the present invention."  (*See* Stump Decl.,

Ex. 2 at 108.)  The prosecution history is, however, silent and ambiguous about what makes the "device as claimed" "quite different" from the Arthun device.  Indeed, everything else that Millipore cites in its brief comes from a lengthy paragraph that provides a general summary of the claimed invention.  (*Id.*)  That paragraph does not, however, address the ***rationale*** behind the "cap" amendment—or any other amendment for that matter.  Thus, as discussed in Gore's 7/30/10 brief at pages 8-11, the tangentiality exception does not apply.  The specification is silent on whether any particular aspect of the "cap" was or was  not tangential to the "cap" amendment, and "[s]ilence does not overcome the presumption," *Honeywell*, 523 F.3d at 1316.

But even if one ***were*** to read the tea leaves in the prosecution history in an effort to determine the possible rationales for the amendment, the evidence suggests that the "prevent from pull out" function of "cap" was directly relevant—not "peripheral" or "tangential"—to the amendment and, thus, fairly comes within the scope of what was surrendered by the amendment. *See Honeywell*, 523 F.3d at 1315.  Millipore's brief emphasizes a single phrase from the prosecution history—"[t]he end of the elongate member adjacent the vessel are selectively sealed off from the vessel by the cap"—and asserts that the "the amendment was made to distinguish Arthun by requiring a cap that selectively seals off the end of the elongate member from the vessel." (Millipore 2d Supp. Br. at 5.)  This may be so, but what Millipore fails to acknowledge is that this "selective sealing" occurs precisely ***because*** the "cap" prevents the elongate member from being pulled out into the shaft.  As shown in Figure 2, the cap—which has a larger diameter than the opening in the body—creates a liquid-tight seal when it is pulled back against the front face of the device:



Therefore, in the claimed device, the way that one "selectively seals" is by employing the very aspect of the "cap" that prevents the elongate member from being pulled out. The sealing and prevent from pull out functions of the "cap" are two sides of the same coin. In fact, the specification emphasizes their intertwined nature by describing them together, in one breath, when discussing the "cap": "A cap 24 can also be provided on the front 30a of the [elongate] member 30 *to—in addition to creating a liquid tight seal—prevent the member 30 from being pulled out.*" ('477 Patent, 7:51-53 (emphasis added).)

The importance of the "prevent from pull out" function of the "cap" is further shown in the very sentence of the prosecution history that Millipore focuses on its brief: "The elongate member . . . can be opened by moving them *forward or by rotating* them to an open shaft position . . . ." (Stump Decl., Ex. 2 at 108 (emphasis added).) Notably, the only direction for opening the device not mentioned—backwards movement—is the *one* direction that is not possible in a device having a "cap" that prevents the elongate member from being pulled out.

Further still, it should be noted that the "prevent from pull out" aspect of the "cap" is the one feature of the "cap" that seems to provide a true point of distinction between the prior art Arthun device and the claimed device—the devices that Millipore argued are "quite different." Like the claimed "cap," Arthun has a seal (i.e., a septum) on the front of the device. (*See* 5/19/10 Hearing Tr. at 57-60; Stump Decl., Ex. 14, Figures 3 & 4.) But unlike the claimed device, Arthun does not have something that prevents its elongate member (i.e., needle) from being pulled out. (Stump Decl., Ex. 14, Figures 3 & 4.) In other words, if anything, it is the "prevent from pull out" aspect of the "cap"—not the "seal" aspect—that supports Millipore's argument to the PTO that Arthun was "quite different from the device claimed in the present invention."

Thus, Millipore cannot meet its burden to show that "prevent from being pulled out" was "*tangential*" or "*peripheral*" to the rationale for the "cap" amendment. If anything, the prosecution history reveals that the "prevent from pull out" aspect of the "cap" is integrally linked to its sealing function and, thus, directly relevant to the "cap" amendment as a whole. In the end, the question is whether devices not including a "cap" that prevents pull out come within "a fair interpretation of what was surrendered" by the "cap" amendment. *Intervet*, 2010 U.S. App. LEXIS 16104 at \*24-25; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734, 737-38 (2002). The answer to this question is plainly "yes." By adding the "cap" limitation, whose very function is to prevent the elongate member from being pulled out, Millipore can fairly be deemed to have surrendered embodiments lacking such a "cap." *Festo*, therefore, bars any DOE argument against Gore's accused silicone seal.

### 2. *Dr. Slocum Does Not Provide the "Particularized Testimony and Linking Argument" Necessary for Millipore to Go Forward on DOE.* Dr. Slocum's new affidavit also does not help Millipore because it merely repeats the flawed DOE arguments that Millipore

made in its first supplemental brief.  Dr. Slocum ignores the requirement under *Warner-Jenkinson* that DOE "must be applied to **individual elements** of the claim, not to the invention as a whole."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) (emphasis added).  At no point does he conduct the required inquiry: comparing the accused "cap" to the claimed "cap" as part of an insubstantial differences or function/way/result analysis.  *Texas Instruments v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996).  Instead, Dr. Slocum improperly compares broad swaths of claim language to combinations of accused structures.  Thus, as explained in Gore's 7/30/10 brief at pages 11-14, Millipore has again failed to adduce the "particularized testimony and linking argument" required by the Federal Circuit to survive summary judgment on DOE.  *Id.*


Dated:  August 30, 2010                              Respectfully submitted,


                                                     /s/  Christopher J. Burrell
                                                     Robert L. Ciociola BBO#084140
                                                     LITCHFIELD & CAVO LLP
                                                     6 Kimball Lane
                                                     Suite 200
                                                     Lynnfield, MA 01940-2682
                                                     Telephone: (781) 309-1500
                                                     Facsimile: (781) 246-0167

                                                     James W. Poradek (pro hac vice)
                                                     Christopher J. Burrell (pro hac vice)
                                                     Katherine S. Razavi (pro hac vice)
                                                     FAEGRE & BENSON LLP
                                                     2200 Wells Fargo Center
                                                     90 South Seventh Street
                                                     Minneapolis, MN 55402
                                                     Telephone: (612) 766-7000
                                                     Facsimile: (612) 766-1600

                                                     **ATTORNEYS FOR DEFENDANT
                                                     W. L. GORE & ASSOCIATES**

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a true copy of this document was served upon the plaintiff in this action by email, as agreed by the parties, on August 30, 2010, addressed to:

Susan G. L. Glovsky
susan.glovsky@hbsr.com

Alexander Akhiezer
alexander.akhiezer@hbsr.com

Patrick A. Quinlan
patrick.quinlan@hbsr.com

_____/s/ Christopher J. Burrell_____
Christopher J. Burrell

fb.us.5665820.01