UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

-------------------------------------------------------X
MILLIPORE CORPORATION,              )    Civil Action No.  09-10765 DPW
    Plaintiff,                                    )
                                                      )    MILLIPORE'S MEMORANDUM
v.                                                   )    IN SUPPORT OF MOTION FOR
                                                      )    RECONSIDERATION AND TO ALTER
                                                      )    OR AMEND A JUDGMENT, OR
W. L. GORE & ASSOCIATES, INC.,   )    ALTERNATIVELY FOR CERTIFICATION
    Defendant.                                )    UNDER RULE 54(b)
-------------------------------------------------------X

## I.    INTRODUCTION

Millipore Corporation respectfully requests that the Court reconsider the Memorandum and Order dated September 20, 2010 ("Memorandum and Order") and alter or amend the judgment in order to correct errors that form the underpinnings of the Court's conclusions, resulting in the improvident grant of summary judgment.

There simply can be no question that the Court focused on the wrong "opening" in the Memorandum and Order. The Court erroneously focused on the opening to the shaft of the Accused Products instead of the "opening to a passage of the elongate member" as required by Claim 1, and is similarly identified as the "opening to a passage of each of the one or more elongate members" in Claim 5. The correct opening, for example, is clearly identified in Figure 2 of the '477 Patent with reference numeral 34 identified as an opening of the [elongate] member in column 5, line 7.

***Summary judgment was granted because the Court focused on the wrong "opening"***

- The Court's focus on the wrong opening led to the erroneous finding that no jury could reasonably conclude that the opening is placed behind the cap

- The Court's focus on the wrong opening led to an erroneous construction of the structure of the "cap" because of a misunderstanding of the basis of statements by the Examiner concerning the Jaeger reference.

*Error in construction of positioned adjacent*

Millipore seeks correction of the Court's construction of positioned adjacent. The Court's erroneous construction results from a misunderstanding of the role of the elongate members in the specification of the '477 Patent at Col. 4, ll. 57-67

Millipore seeks to have the Court reconsider erroneous decisions in the Memorandum and Order, remove the entry of summary judgment in favor of the defendant, and instead move this action to discovery and trial to determine issues of fact that remain to be resolved.

In the alternative, if the Court does not reconsider its Memorandum and Order, the plaintiff seeks an express determination pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay and direct entry of a final judgment as to fewer than all claims, staying the pending counterclaims, as required by the Federal Circuit. *See Pause Tech. LLC v. Tivo Inc.*, 401 F.3d 1290, 1293-4 (Fed. Cir. 2005).

## II.     GROUNDS FOR RECONSIDERATION

"A court appropriately may grant [such] a motion for reconsideration where the movant shows a manifest error of law or newly discovered evidence. … In addition, such a motion should be granted if the court has patently misunderstood a party . . . or made an error not of reasoning but apprehension." *Rasheed v. St. Amand,* 2010 U.S. Dist. LEXIS 84154 at *3 (D. Mass., Aug. 16, 2010), internal quotations omitted. Reconsideration is appropriate when there is: (1) an intervening change in the controlling law; (2) newly discovered evidence that bears on the question; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Ellis v. U.S.*, 313 F.3d 636, 647-48 (1st Cir. 2002).

It is respectfully submitted that the Court's September 20, 2010 Memorandum and Order (D.I. 70) ("Memorandum and Order") is based on errors of law or fact, and that the Memorandum and Order as well as the judgment entered in favor of the defendant has to be

altered or amended in order to prevent manifest injustice. Pursuant to Fed. R. Civ. P. 59(e), Millipore requests that the Court amend the Order to deny Gore's motion for summary judgment of non-infringement and to correct its construction of the term "adjacent."

The Court's focus on the wrong opening led to the erroneous finding that no jury could reasonably conclude that the opening is placed behind – which the Court construes as "at the back of" – the cap. Because the Court recognizes that the "rigid rod has an opening located in the *back* of the silicone seal," focusing on the correct opening should lead to a reversal of the determination that the Accused products cannot infringe the '477 Patent and eliminate this basis for granting summary judgment. *See* Memorandum and Order footnote 12. As a result, there remains, at least, a question of fact for the jury.

The Court's focus on the wrong opening also led to an erroneous construction of the structure of the "cap" because of a misunderstanding of statements by the Examiner concerning the Jaeger reference. Further, the construction of the structure of the "cap" is contrary to the plain meaning of "cap," and improperly relies on a particular example disclosed in the specification. A correct construction of the structure of "cap" should lead to a reversal of the conclusion that the Accused Products do not literally infringe Claims 1 and 5 of the '477 Patent, eliminating this basis for granting summary judgment. As a result, there remains at least a question of fact for the jury.

To assist the Court in understanding the opening that should be the focus of the Court's analysis, an Affidavit of Alexander H. Slocum, Ph.D. in support of Millipore's Motion is being provided herewith ("Slocum Affidavit") as an aid for the court in understanding the technology at issue. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005); *EMI Group N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 892 (Fed. Cir. 1998).

To the extent that the Court does not alter or amend its conclusion on literal infringement, it is respectfully requested that the Court consider the arguments herein and the Slocum Affidavit filed herewith directed to infringement of Claims 1 to 5 under the doctrine of equivalents, taking into account the Court's constructions in the Memorandum and Order.[1]

Therefore, the plaintiff seeks to have the Court alter or amend entry of summary judgment in favor of the defendant to correct these errors in the Memorandum and Order. Properly construed and focusing on the correct "opening," the Court should let the action proceed to trial or find in favor of Millipore on literal infringement.

In addition, the Court misconstrued the term "adjacent" as a result of a misunderstanding of the intrinsic evidence in the specification. The Court's construction is improperly based on the accused device in importing the extraneous concept of intervening structure into the construction.

### III.   ARGUMENT

#### A.   Proper Construction Of The Function, Structure and Location of the Opening Vis-à-vis the "Cap" Should Lead to a Denial of Summary Judgment

The Court construed the term "cap" by focusing on the function, the structure, and the location of the opening vis-à-vis the "cap." Memorandum and Order at pages 11-19. The Court correctly found that summary judgment could not be granted based on the cap's function, but reached the erroneous conclusion that the Accused Products do not literally infringe Claims 1 and 5 of the '477 Patent based on erroneous conclusions concerning the structure of the cap and the location of the opening vis-à-vis the "cap." Memorandum and Order at 38 and 39.

---

[1] It is respectfully submitted that differences between the preliminary construction of the structure of the "cap" at the Hearing on May 19, 2010 and the construction in the Memorandum and Order was unforeseen and unforeseeable, and it is respectfully requested that Millipore be permitted to address doctrine of equivalents with the construction in the Memorandum and Order, including the evidence provided in the Slocum Affidavit filed herewith. *See Markman v. Westview Instruments*, 517 U.S. 370, 384 (U.S. 1996); Transcript of May 19, 2010 Hearing at p. 16, l. 3 to 6 and p. 23, l. 20 to p. 29, l. 23.

1. The Court concluded that the function of the cap is met by Gore's "silicone seal"

The Court correctly determined the function of the cap to be "a feature that creates a liquid tight seal and can, but is not required to, prevent the elongate member from being pulled out of the shaft" and found that a jury could reasonably find that the silicone seal, "the equivalent of the elongate member in the Accused Products," performs the same function as the claimed device. Memorandum and Order at page 15. As a result, the Court found, "Accordingly, summary judgment for literal infringement cannot be granted on this basis."

2. Focus On the Right Opening is Critical

A misunderstanding as to which "opening" is the opening in Claims 1 and 5 in each of 1) Figure 2 of the '477 Patent, 2) the Gore sampler, and 3) Figure 2B of Jaeger needs to be rectified before addressing the erroneous conclusions reached in the Memorandum and Order concerning the structure, and the location of the opening vis-à-vis the "cap." Claims 1 and 5 of the '477 Patent identify the "opening" as "an opening to a passage of the elongate member" (Claim 1) and "an opening to a passage of each of the one or more elongate members" (Claim 5). *See* Slocum Affidavit at ¶¶7 to 10. This opening is identified as reference numeral 34 in the following drawing:



Figure 2

       3.       Focusing On the Right Opening, Gore's Opening Is Behind the Cap

Instead of focusing on the opening to a passage of the elongate member, identified as reference numeral 34 in Figure 2, the Court considered the opening to the shaft, which would be 24 in Figure 2, to be the opening in Claims 1 and 5. Focusing on the wrong opening led to erroneous conclusions.

In the Gore products, the Five-Valve Sampler and the Single-Valve Sampler, the "opening," as that term is used in Claims 1 and 5, would be the opening to the passage in the elongate member, which has also been referred to as a "rigid rod" in this case. The opening to the passage is identified in the following diagram from defendant's Declaration of Domenic Sciamanna in Support of Gore's Motion for Summary Judgment of Non-Infringment (D.I. 30). Labels identifying the "opening" as that term is used in Claims 1 and 5, and the "Shaft opening," which is not the opening as that term is used in Claims 1 and Claim 5, have been added to the drawing.



CROSS-SECTION OF GORE'S SINGLE-VALVE DEVICE

The Court determined at pages 18 to 19 of the Memorandum and Order that "the location of the opening vis-à-vis the cap is to be construed as 'the opening is located at the back of the cap.'" In a footnote, the Court recognized that the opening that should be considered by the Court would meet the limitation of the claim, saying: "the 'rigid rod' has an opening located in the back of the silicone seal." Memorandum and Order at page 39, footnote 12. It is this opening that is the "opening" as that term is used in Claims 1 and 5 because it is the opening to a passage in the elongate member. The Court did not consider this opening, according to footnote 12, because "it does not appear that the liquid flows from that opening but rather from the opening located on the front of the device." Nowhere does Claim 1 or Claim 5 recite that "liquid flows from [the] opening" and the source of the Court's language in footnote 12 is unknown. Instead, the opening in Claims 1 and 5 an opening to a passage in an elongate member. As the Court has concluded in footnote 12, the elongate member (rigid rod) has an opening located in the back of the cap (silicone seal). *See* Slocum Affidavit ¶¶ 11 to 17.

Therefore, there is at least a question of fact concerning whether the opening in the Accused Products is placed behind the cap. The Court's contrary conclusion at page 39 of the Memorandum and Order results from consideration of the wrong opening in the Gore samplers. Accordingly, summary judgment for noninfringement cannot be entered based on whether the opening in the Accused Products is placed behind the cap.

        3.        Focusing On the Right Opening, Gore's "silicone seal" has the structure of a cap

The Court construed the term "having" to mean that "the elongate members and the cap are part of the same structure." Memorandum and Order at page 18. This construction is based in part on a misunderstanding of statements by the Examiner by focusing on the wrong "opening" in the Jaeger reference. In addition, the construction is contrary to the plain meaning

of "having" in the context of "elongate members having a cap" in Claims 1 and 5, is based on a misunderstanding of Figure 2 of the '477 Patent, and improperly limits Claims 1 and 5 to an example.

It is respectfully submitted that the Court ignores the plain meaning of "cap" in the phrase "elongate members having a cap" in reaching the conclusion that "there is a presumption that the cap and the elongate member are part of the same structure." The Court focused on consistent use of "having" in the clauses, "the elongate members having a front and a rear" (Claim 1) and "one or more elongate members having a front and a back" (Claim 5). But the meaning of "front," "rear," and "back" is quite different from "cap." One of ordinary skill in the art at the time the invention in the '477 Patent was made would understand from the plain meaning of "cap," as it appear in Claims 1 and 5, that the "cap" and "elongate member" can be either a part of the same structure or can be distinct from one another (*e.g.*, the cap is not a portion of the elongate member, but it may or may not be detachable). As indicated by the Court, "I have a cap. It is not the same as me." Transcript of May 19, 2010 Hearing at p. 25, l. 10. In view of the plain meaning of the term "cap" to one of ordinary skill in the art, use of a term like "connected to," as suggested by the Court (Memorandum and Order at page 16), was unnecessary to encompass a distinct cap. The word "cap" itself encompasses a structure that can be distinct from the "elongate member," and one of ordinary skill in the art of machine design would understand that convenience of assembly may require that the "cap" be distinct and that it may be detachable from the "elongate member." *See* Slocum Affidavit at ¶¶ 18 and 19. Therefore, the Court improperly began with an erroneous presumption.

Contrary to the Court's conclusion, the Court's erroneous "presumption" that the cap and the elongate member are part of the same structure is not consistent with a proper consideration of Figure 2. It is true that Figure 2 uses the same shading pattern for the elongate members "30"

and the "cap," 65, but use of the same shading is merely an indication in the particular example in the figure of the same material.  The vertical line appearing between the cap and the elongate members means that the cap is not part of the elongate member.  One or ordinary skill would understand that Figure 2 is showing a cap that is not part of the structure of the elongate member. *See* Slocum Affidavit at ¶20.  Therefore, the Court's erroneous presumption is not supported by a proper view of Figure 2.

In addition, one of ordinary skill in the art of machine design would understand that whether cap (65) and elongate member (30) are parts of the same structure is a design choice. For example, ease of manufacture may lead to assembly of the device by placing elongate member (30) inside shaft (26) through the open end at 30B first, and then attaching cap (65). One of ordinary skill in the art would understand from Figure 2 that there are a number of examples that could be made that would have a "cap" that is distinct from the elongate member. *See* Slocum Affidavit at ¶20.

Further, a claim construction that imports a limitation into the claims from the specification is improper.  *See, e.g,, Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments. In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.")(internal quotations and citations omitted).

The Court's erroneous "presumption" that the cap and the elongate member are part of the same structure is also inconsistent with the prosecution record because the Court's focuses on the wrong opening in U.S. Patent No. 6,860,162 ("Jaeger") and misunderstands statements by the Examiner.  The proper interpretation of Jaeger and the statements made by the Examiner at page

124 of the '477 Patent Prosecution History Record support the determination that the "cap" of the device of the '477 Patent can be distinct from the "elongate member" because the Examiner concludes that 102/106 is "certainly a cap" and Figure 2B clearly shows that it is distinct from the elongate member (plunger 96). One of ordinary skill in the art, reading the '477 Patent as of December 23, 2003, would understand that the "cap" in the claims could be distinct from the elongate member.



FIG. 2B

Jaeger samples wine, presumably in a sterile manner, but no single "[elongate] member" includes both a cap and an opening to a passage. Member 106/102 is certainly a cap, but there is no opening. Elements 106/102 and 60 [80] do provide for an opening [and] a cap, but they are not collectively [on] a single member.

Figure 2B of U.S. Patent No. 6,860,162 ("Jaeger reference") appears above with annotations added. On page 124 of the prosecution history for the '477 Patent (D.I. 37-3), the Examiner focused on Figure 2B in his description of the Jaeger reference, stating that, "Jaeger shows (Figure 2B) that a piston 68 on a rod is clearly a stop/limit/anchor." In Figure 2B there are at least two parts that could be considered an "elongate member," the horizontal piece with reference numeral 96 (the label "elongate member (horizontal) (96)" is added to Figure 2B above), and the vertical piece with reference numeral 76 (the label "elongate member (vertical) (76)" is

added to Figure 2B above).  The Examiner says on page 124 of the prosecution history, "Jaeger samples wine, presumably in a sterile manner, but no single 'member' includes both a cap and an opening to a passage."  Therefore, according to the Examiner, focusing on the vertical member or the horizontal member, neither one has both a cap and an opening to a passage (the labels "cap," "opening," and "passage" are added to Figure 2B above).  *See* Slocum Affidavit ¶ 23.

The Examiner reached the correct conclusion with respect to the horizontal member (referred to as a plunger (96) in the Jaeger patent), because it extends through the probe shaft (passage (68)).  (Jaeger reference, Col. 7, ll. 21 to 22.)  The plunger (96) is like the elongate member in the shaft of Figure 2 of the '477 Patent, but the plunger (96) has no passage in it, it is a solid rod.  As a result, there can be no opening to a passage in the elongate member (plunger) because there is no passage in the elongate member (plunger).  The Examiner continues on page 124, "Member 106/102 is certainly a cap, but there is no opening."  Therefore, even though 106/102 is distinct from the elongate member, as shown in Figure 2B, the Examiner correctly concludes that it is "certainly a cap."  *See* Slocum Affidavit ¶ 24.

The Examiner also reached the correct conclusion with respect to the vertical member of Figure 2B in Jaeger (referred to as a handle (76) in the Jaeger reference) has a passage (78).  The Jaeger reference states that "A passage 78 extends through the handle 76 between a sample outlet 80 from the probe passage 68 and a sample discharge port 82 from the handle passage ... ."  Jaeger Col. 6, ll. 43 to 48.  Therefore, there is a passage in the vertical elongate member.  In the prosecution history of the '477 Patent at page 124, the Examiner notes that, "[e]lements 106/102 and 60 do provide for an opening a cap, but they are not collectively a single member.  Of course, element 60 does not have a cap."  It appears that the Examiner made a typographical error when he referred to element 60 because the Jaeger reference indicates that element (60) is a "bushing."  Jaeger Col. 6, line 38.  Whatever was intended when the erroneous reference

numeral 60 was used, it does not alter the Examiner's conclusion that the cap "106/102" in the Jaeger reference is certainly a cap.  *See* Slocum Affidavit ¶ 25.

At page 18 of the Memorandum and Order, the Court is again focusing on the wrong opening when considering the Examiner's discussion of the "cap and the opening provided in Jaeger."  The Court may have considered the "opening" in this discussion to be the opening to probe passage (68), but this passage runs along the <u>outside</u> of elongate member (96).  Thus, this opening is not an opening to a passage of the elongate member, as required by Claims 1 and 5.  *See* Slocum Affidavit ¶ 26.

Therefore, the "cap" of Claims 1 and 5 of the '477 Patent is found in Gore's Five-Valve Sampler and it is the silicone seal.

The Court improperly "construed the term 'cap' used in Claims 1 and 5 of the '477 Patent as being part of the same structure as the elongate member, rather than as a distinct element." Memorandum and Order at p. 38.  As a result, the Court incorrectly concluded that "No reasonable jury could conclude that the silicone seal and the rigid rod of the Accused Products are part of the same structure" and for this reason concluded that the Accused Products do not literally infringe Claims 1 and 5 of the '477 Patent.

Proper construction of the structure of the cap raises at least a question of fact for the jury as to literal infringement by the Accused Products with respect to Claims 1 and 5 of the '477 Patent.

      B.      <u>Gore's Samplers Infringe Under the Doctrine of Equivalents</u>

           1.      Prosecution History Estoppel Does Not Apply

As the Court' recognizes, "[e]ven in the absence of literal infringement, an accused process or device can still be found to infringe under the doctrine of equivalents."  Memorandum and Order at 39, quoting *Festo*.

The Court misapplies legal precedent in support of a finding of prosecution history estoppel.

"The first question in a prosecution history estoppel inquiry is whether an amendment filed in the Patent and Trademark Office ('PTO') has narrowed the literal scope of a claim." "[T]he second question is whether the reason for that amendment was a substantial one relating to patentability." If these two inquiries are true, then there may be a presumption that the patentee is barred from asserting infringement under the doctrine of equivalents as to the limitations in question. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003) (en banc). A patentee may rebut presumption of surrender, however, by "demonstrat[ing] that the alleged equivalent would have been unforeseeable at the time of the narrowing amendment, that the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question, or that there was 'some other reason' suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent." Emphasis added. *Festo* at 1369.

The alleged equivalent is a cap that is not distinct from the elongate member. The Court recognizes that the prior art Arthun reference "fails to teach an elongate member as thus claimed because it does not contain *any* cap but merely uses a needle to pierce the septum and allow flow to a sample bag. In fact, the rationale for the amendment was explained by Applicant:

> [*Referring to the claimed device.*] **Each member has a cap** on its front end and an opening behind the cap to a passage that extends from the opening to the second end of the member. The second end of the elongate member(s) are attached to and in fluid communication with a conduit which is attached to and in fluid communication with a sample container. **The end of the elongate member adjacent the vessel are [***sic***] selectively sealed off from the vessel by the cap** and can be opened by moving them forward or by rotating them to an open shaft position thereby exposing the opening and passage within the elongate member that allows fluid to move from the vessel through the member into a tube and then a collection bag.

**Arthun fails to teach an elongate member as claimed. Arthun uses a septum that is pierced by a hypodermic needle to allow flow into the needle and then to a sample bag.** This quite different from the device as claimed in the present invention.

D.I. 37-3, page 108 (emphasis added).

The rationale underlying the narrowing amendment is presented in the above quoted portions of the prosecution history: the amendment was made to distinguish from Arthun by requiring a cap that selectively seals off the end of the elongate member from the vessel, and Arthun fails to teach an elongate member as claimed because Arthun uses a septum that is pierced by a hypodermic needle to allow flow into the needle and then to a sample bag. Because the rationale for the amendment was to narrow the claimed universe of devices to those that have a cap for the stated purpose of sealing off the elongate member from the vessel, the amendment bears no more than a tangential relation to a cap that is distinct from an elongate member. And because Arthun did not have a cap at all, the amendment was not being made to distinguish a device with a cap that was part of the elongate member, which is the equivalent in question.

Because the rationale for the amendment was to narrow the claimed universe of devices to those that have a cap for the stated purpose of sealing off the elongate member from the vessel, the amendment bears no more than a tangential relation to a cap that is not distinct from the elongate member.

2. Evidence Supports Infringement Under the Doctrine of Equivalents

Millipore previously provided an Affidavit of Alexander H. Slocum, Professor of Mechanical Engineering at the Massachusetts Institute of Technology that addressed infringement under the doctrine of equivalents. Millipore files herewith a further Affidavit of Professor Slocum that takes into account infringement under the doctrine of equivalents if the Court does not change its construction of claim terms in response to this motion and find that a jury could reasonably conclude that there is literal infringement. It is respectfully submitted that

the evidence provided in the Slocum Affidavit filed herewith raises genuine issues of material fact, supported by particularized testimony and linking argument, as to the insubstantiality of the differences between the structure and location of the silicone seal of the Accused Products and of the cap in the claimed device. For the sake of brevity, the evidence, which appears at paragraphs 32 to 40.

    C.    The Court Did Not Address Alternative Basis of Infringement Previously Presented by Millipore

The Memorandum and Order did not address an alternative basis for literal infringement presented by Millipore in the event that the Court adopted the construction of the structure of the "cap" in Claims 1 and 5 that would require that the "cap" and the "elongate member" are part of the same structure. *See* Millipore's Opposition to Defendant's Motion for Summary Judgment (D.I. 50), pages 10-11.

Although Millipore considers the better course to be a change in this construction, one of ordinary skill in the art at the time when the invention was made could understand that the tip of Gore's "rigid rod" may be described as a "cap." Slocum Affidavit at ¶ 41. This portion of the "rigid rod" is shown below:



The function of the cap is to create a liquid-tight seal. The tip of Gore's "rigid rod" creates a liquid-tight seal by pressing Gore's "silicone seal" against the body of the device with the result of preventing fluid flow to the opening in the elongate member when the elongate member is in the closed position. Thus, the tip of Gore's "rigid rod" satisfies the Court's

criterion for the function of the "cap." Slocum Afft. ¶ 42. With respect to the location of the "cap" relative to the opening in the elongate member, the tip of Gore's "rigid rod" has an opening behind the tip. Thus, the tip of Gore's "rigid rod" satisfies the Court's criterion for the location of the "cap." Slocum Afft. ¶ 43. With respect to the structure of the "cap," the tip of Gore's "rigid rod" and the "rigid rod" itself are a part of the same structure. As such, the tip of Gore's "rigid rod" satisfies the "structure" criterion for the "cap," as defined by the Court. Slocum Afft. ¶ 44.

With the Court's construction of the structure of the "cap," there is still a genuine issue of material fact for a jury as to literal infringement by the Gore sampler on this alternative basis.

D.  Construction of "Positioned Adjacent" is Erroneous

As stated in the Memorandum and Order at page 23 "[t]he term 'positioned adjacent' used in Claim 1 of the '477 Patent designates which end of the elongate member is nearest to the fluid receptacle." The analysis really need not go any further. Millipore's proposed construction of "positioned adjacent" as "nearby" is consistent with the Court's statement, and Millipore maintains that "nearby" is the correct construction. The addition of any other limitation to the term is error. Alternatively, if the Court requires a more descriptive construction than "nearby," the term could be construed properly as "designating which end of the elongate member is nearest to the fluid receptacle" as indicated in the Memorandum and Order at page 23.

Instead, the Court construed "adjacent" as "next to or adjoining with no intervening structure between the elongate members and the fluid receptacle." This construction is erroneous as it improperly imports limitations from a particular embodiment of the specification into the claims. *Phillips* warns against "reading limitations from the specification into the claim." *Phillips,* 415 F.3d at 1323. For example, *Phillips* notes that "we have … rejected the contention that if a patent describes only a single embodiment, the claims of a patent must be construed as

being limited to that embodiment … because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments." *Id*. Likewise, in the present case, a person of ordinary skill in the art would not confine his definition of "positioned adjacent" to an exact representation in the specification with all of the characteristics that Gore asserts it must have.

In arriving at the construction, the Court refers to Col. 4, ll. 57-67 of the '477 Patent stating that the specification requires the elongate member to stop the flow of fluid when placed in the closed position. However, the elongate members are not themselves required to stop the flow of fluid when in the closed position. Rather, the specification requires that the release of fluid out of the fluid receptacle be frustrated when the elongate members occupy the closed position. The specification does not require that the release of fluid be frustrated by the elongate members. Similarly, Claim 1 states that fluid cannot flow into the opening behind the cap and through said passage in each elongate member when the elongate member is in "closed" position. Nothing in either the '477 Patent or in Claim 1 requires that the elongate member itself "stop the flow of fluid." Rather, it is placing the elongate member into the "closed" position that stops the flow of fluid into the opening behind the cap. The specification only indicates the consequence, "that the release of fluid out of said fluid receptacle ... is frustrated" when the elongate member is in the closed position. Therefore, Col. 4, ll. 57-67 of the '477 Patent does not require the elongate member itself to stop the flow of fluid when placed in the closed position. To the contrary, it is the cap that creates a liquid tight seal when the elongate member is in the closed position. See '477 Figure 2 and above discussion of the cap.

The Court cites the case of *Boss Industries, Inc. v. Yamaha Motor Corp. U.S.A.*, 333 Fed. Appx. 531; 2009 U.S. App. LEXIS 11382 (Fed. Cir. 2009) in support of its construction. In *Boss Industries*, 333 Fed. Appx. 531 at 540-542, the plaintiff argued that, in the context of a claim to a

snowmobile seat that recited "a storage section, disposed adjacent the flexible seat section, having a storage cavity formed therein" "adjacent" meant "close to." The Court disagreed, based, in part, on the plaintiff's usage of the term "adjacent" to describe the sides of a polygon that form corners and, in part, because other unasserted claims cover the embodiments that the plaintiff attempted to encompass by its proposed construction. *Boss Industries*, 333 Fed. Appx. 531 at 541. None of these facts are present in the context of Claim 1 of the '477 Patent. The patentee did not use the term "adjacent" in a context that changes the ordinary meaning of the term (as the plaintiff did in *Boss Industries*); and no claims of the '477 Patent remain unasserted (as was the case in *Boss Industries*). Thus, under the facts of present case, there is no basis for a conclusion that the term "adjacent" should be limited to "next to or adjoining" as these terms were used by the court of *Boss Industries*. But even assuming *Boss Industries* were analogous, the court in *Boss Industries* did not explicitly exclude intervening structures, as the Court has in the present case, from the construction, leaving open that factual issue to the jury.

It appears that the explicit exclusion of "intervening structures" in the Court's construction may have resulted from construing "positioned adjacent" in light of the accused device, however, "[a] claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, not in light of the accused device." *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985). Otherwise, "[t]hat procedure would make infringement a matter of judicial whim." *Id.*

Therefore, the term "positioned adjacent," as it appears in Claim 1 of the '477 Patent, means "nearby" and should be construed accordingly. Importation of the extraneous concept of intervening structures is improper and, if anything, should be left for the jury as a question of fact.

Even if the Court continues to construe "adjacent" as indicated in the Memorandum and Order, the Slocum Affidavit filed herewith raises genuine issues of material fact, supported by

particularized testimony and linking argument, as to the insubstantiality of the differences between the elongate members in the Gore sampler and in the claimed device, regardless of intervening structure. *See* Slocum Affidavit at 48 to 51.

    E.    The Court's Construction of the Remaining Claim Terms Leave Questions of Fact for the Jury Concerning Infringement

The remaining claim terms, as construed by the Court, raise genuine issues of material fact as to infringement. *See* Slocum Affidavit at 48 to 52. A determination of infringement is a question of fact that must be decided by the jury. Therefore, summary judgment is improper.

## IV.    CONCLUSION

The Court should alter or amend the entry of summary judgment to correct the above errors in the Memorandum and Order. Alternatively, the plaintiff seeks an express determination pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay and direct entry of a final judgment as to fewer than all claims as required by the Federal Circuit, and stay the pending counterclaims.

    MILLIPORE CORPORATION

    By its attorneys,

Dated: October 15, 2010

    /s/    Susan G. L. Glovsky
    Susan G. L. Glovsky (BBO# 195880)
    Patrick A. Quinlan (BBO# 667183)
    Alexander Akhiezer BBO# 669383
    Hamilton, Brook, Smith & Reynolds, P.C.
    530 Virginia Road, P.O. Box 9133
    Concord, Massachusetts 01742
    Telephone: (978) 341-0036
    Fax: (978) 341-0136
    susan.glovsky@hbsr.com
    patrick.quinlan@hbsr.com
    alexander.akhiezer@hbsr.com

LOCAL RULE 7.1(A)(2) CERTIFICATION

      I, Susan G. L. Glovsky, hereby certify that I contacted James W. Poradek, counsel for the defendant, in a good faith effort to resolve or narrow the issues with respect to altering or amending the summary judgment order.

                                              /s/    Susan G. L. Glovsky
                                              Susan G. L. Glovsky


CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 15, 2010.

                                              /s/    Susan G. L. Glovsky
                                              Susan G. L. Glovsky


1026319.1