```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

EMD MILLIPORE CORPORATION¹              )
                                        )
     Plaintiff,                         )
                                        )    CIVIL ACTION NO.
v.                                      )    09-10765-DPW
                                        )
W.L. GORE & ASSOCIATES, INC.,           )
                                        )
     Defendant.                         )
```

MEMORANDUM AND ORDER
March 20, 2012

Plaintiff Millipore Corporation ("Millipore") brought this action against Defendant W.L. Gore & Associates, Inc. ("Gore") for infringement of U.S. Patent No. 7,293,477 (the "'477 Patent"). The '477 Patent relates to fluid sampling devices and kits comprising sterilized components of fluid sampling devices. In response, Gore filed counterclaims for declaration of non-infringement, invalidity, and inequitable conduct, and moved for summary judgment of non-infringement.

After I granted summary judgment of non-infringement in favor of Gore in a September 20, 2010 Memorandum and Order, *see Millipore Corp. v. W.L. Gore & Assocs., Inc.*, 750 F. Supp. 2d 253 (D. Mass. 2010), Millipore filed the motion now before me for reconsideration and to alter or amend the judgment contemporaneously with a Notice of Appeal to the Federal Circuit.

---

[1] By notice filed March 5, 2012 (Dkt. No. 82), counsel for Plaintiff reports that the Plaintiff's name has been changed from Millipore Corporation to EMD Millipore Corporation.

I will deny Millipore's motion, except as it pertains to the location of the cap vis-à-vis the opening for literal infringement purposes.

## I. BACKGROUND

Because the technical background and the procedural history of the case were recited in detail in the September 20, 2010 Memorandum and Order, only a brief discussion is necessary here.

The United States Patent and Trademark Office issued the '477 Patent to Millipore on November 13, 2007. The '477 Patent is titled "Disposable, Pre-Sterilized Fluid Receptacle Sampling Device" and consists of Claims 1 to 5. '477 Patent col. 8 l. 37 - col. 10 l. 19. The purpose of this patent is to provide "a fluid sampling device that enables the withdrawal of several samples of fluids from a fluid receptacle, wherein said withdrawal occurs in a substantially sterile manner, and wherein inter-sample cross-contamination is substantially discouraged." *Id.* at col. 2 ll. 40-45.

Millipore filed a single-count complaint against Gore alleging infringement of the '477 Patent (Count I) on May 11, 2009. In essence, Millipore contends that certain of Gore's sampling devices (the "Accused Products") infringe Claims 1 and 5 of the '477 Patent either literally or under the doctrine of equivalents. Importantly, the Accused Products use a multi-piece valve structure with a silicone seal - known as a cap

in the asserted claims - which is at the core of Millipore's patent infringement allegations.

In response to Millipore's complaint, Gore counterclaimed by seeking declaratory judgment of non-infringement and invalidity of the '477 Patent on August 5, 2009.  Thereafter, Gore filed a motion for summary judgment of non-infringement based on its proposed construction of the cap-related limitations recited in the asserted claims, as well as a motion for leave to amend its Answer and Counterclaims to include an affirmative defense and counterclaim of inequitable conduct.

A first hearing was held before me on May 19, 2010 to discuss claim construction and the pending motions.  At that hearing, I communicated to the parties my initial inclinations on claim construction but reserved the right to refine them under advisement.  In addition, I granted Gore's motion to amend its Answer and Counterclaims.  Gore subsequently amended its Answer and Counterclaims to include an affirmative defense and counterclaim of inequitable conduct.

On September 8, 2010, I held a second hearing regarding Gore's motion for summary judgment.  Following that hearing, I issued the September 20, 2010 Memorandum and Order granting summary judgment of non-infringement in favor of Gore. *Millipore*, 750 F. Supp. 2d at 276.  Judgment reflecting that Memorandum and Order was entered on September 21, 2010.

## II.  STANDARD OF REVIEW

The motion before me for reconsideration and to alter or amend was brought under Federal Rule of Civil Procedure 59(e).  A Rule 59(e) motion "may only be granted if the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations."  *Melendez v. Autogermana, Inc.*, 622 F.3d 46, 55 (1st Cir. 2010) (quoting *Global Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 25 (1st Cir. 2007)).  Such a motion should be granted if the court has "patently misunderstood" a party, or if the court made an error "not of reasoning but of apprehension."  *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 82 (1st Cir. 2008) (quotations and citation omitted).

As a general principle, "the district courts have considerable discretion in deciding whether to grant or deny a motion [for reconsideration or a motion] to alter or amend under Rule 59(e)."  *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 1490 (1st Cir. 2004).  "That discretion requires a balancing of the need for finality of judgments with the need to render a just decision."  *Id.*  But a Rule 59(e) motion is not meant to "provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment."  *Marks 3 Zet-Ernst*

*Marks GmBh & Co. KG v. Presstek, Inc.*, 455 F.3d 7, 15-16 (1st Cir. 2006) (quoting *Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25*, 426 F.3d 416, 422 (1st Cir. 2005)).

### III.  DISCUSSION

As grounds for reconsideration, Millipore raises three separate arguments pertaining to literal infringement, the doctrine of equivalents, and the construction of the claim term "positioned adjacent."  I will discuss these three arguments in turn.

#### A.  *Literal Infringement*

Millipore argues that my conclusion that the Accused Products do not literally infringe Claims 1 and 5 of the '477 Patent is erroneous.  In particular, Millipore disputes my conclusion as its pertains to the structure and the location of the cap.

Both the location and the structure of the cap are described in Claims 1 and 5 of the '477 Patent.  *See* '477 Patent col. 8 ll. 46-48 ("elongate members having a cap and an opening to a passage of the elongate member behind the cap, the elongate members being displaceable between 'open' and 'closed' positions such that liquid can flow into the opening behind the cap") (Claim 1); col. 9 l. 20 - col. 10 l. 2 ("said one or more elongate members having a cap and an opening to a passage of each of the one or more elongate members behind the cap") (Claim 5).

1.   Location of the Cap vis-à-vis the Opening

Millipore contends that I focused on the wrong opening - i.e., the opening of the shaft, instead of the opening of the elongate member - thereby leading to an erroneous finding that the Accused Products did not literally infringe Claims 1 and 5 of the '477 Patent on this ground.

In the Memorandum and Order, I construed the term "behind" used in Claims 1 and 5 as "at the back of." *Millipore*, 750 F. Supp. 2d at 264. Based on this construction, I found that the Accused Products did not literally infringe on the claimed device because "no jury could reasonably conclude that the opening through which the fluid flows in the Accused Products is placed behind the cap." *Id.* at 272. In reaching that conclusion, I focused on the opening of the shaft, while recognizing that the rigid rod, i.e., the equivalent of the elongate member in the Accused Products, also had an opening located in the *back* of the silicone seal, i.e., the equivalent of the cap in the Accused Products. *Id.* at 272 n.12.[2]

---

[2] The reason I focused on the opening of the shaft, rather than on the opening of the elongate member, is the language used in Claim 1 of the '477 Patent, specifically that "the elongate members [are] displaceable between 'open' and 'closed' positions *such that liquid can flow into the opening* behind the cap"). *See* '477 Patent col. 8 ll. 47-48 (emphasis added). The liquid does not flow in the same fashion in the claimed device and in the Accused Products, thereby leading to some confusion. In the claimed device, the liquid appears to flow through the opening of the shaft and the opening of the elongate member simultaneously, as there is no clear distinction between both openings in the

Having considered the evidence of record, I now find that a genuine dispute of material fact exists as to whether the Accused Products contain an opening, as that term is used in Claims 1 and 5 of the '477 Patent, located *behind* the silicone seal.  As suggested by Millipore, the proper focus is on the opening of the elongate member, rather than on the opening of the shaft.  In fact, the language used in Claims 1 and 5 of the '477 Patent refers to "elongate members having a cap and an opening."  *See* '477 Patent col. 8 ll. 46-48 ("elongate members having a cap and an opening to a passage of the elongate member behind the cap") (Claim 1); col. 9 l. 20 - col. 10 l. 2 ("said one or more elongate members having a cap and an opening to a passage of each of the one or more elongate members behind the cap") (Claim 5). In the September 20, 2010 Memorandum and Order, I construed the term "having" to mean that "the elongate members and the cap are part of the same structure."  *Millipore*, 750 F. Supp. 2d at 264. Applying this construction of the term "having" supports a presumption that the elongate member and the opening are also part of the same structure and that the opening envisioned in

---

claimed device, both of them being located behind the cap.  *See* '477 Patent, Figure 2.  By contrast, the liquid flows in the Accused Products first through the opening located in the *front* of the device, i.e., the opening of the shaft, before flowing through the opening of the elongate member located *behind* the silicone seal.  (Decl. of Domenic Sciamanna, Cross-section of Gore's single valve sampling device, p. 5.)  The location of the opening of the shaft underlines another difference between the claimed device and the Accused Products.

Claims 1 and 5 of the '477 Patent thus refers to the opening of the elongate member, rather than to the opening of the shaft.

Now focusing on the opening of the elongate member, I find a jury could reasonably conclude that the opening both in the Accused Products and in the asserted claims is placed *behind* the cap. Accordingly, the claim construction provided in the September 20, 2010 Memorandum and Order must be revised to reflect this change.[3]

### 2. Structure of the Cap

Millipore also contends that my construction of the structure of the cap is erroneous. Based on my construction of the term "having" as "the elongate members and the cap are part of the same structure," *Millipore*, 750 F. Supp. 2d at 264. I found that the Accused Products did not literally infringe on the claimed device because "[n]o reasonable jury could conclude that the silicone seal and the rigid rod of the Accused Products are part of the same structure," *id.* at 272.

Millipore's argument that the Court's construction of the structure of the cap is erroneous is based on three separate

---

[3] As will be discussed in Section III.A.2 *infra*, the change concerning the location of the cap does not affect my conclusion that the Accused Products do not literally infringe the claimed device because of the structure of the cap. As noted in the Memorandum and Order, "this finding [on the structure of the cap] alone is sufficient to establish that the Accused Products do not literally infringe Claims 1 and 5 of the '477 Patent." *See Millipore Corp. V. W.L. Gore & Assocs., Inc.*, 750 F. Supp. 2d 253, 272 n.11 (D. Mass. 2010).

8

grounds, all of which fail to establish a manifest error of law or newly discovered evidence as required to succeed on a Rule 59(e) motion.

*First*, Millipore contends that this construction is contrary to the plain meaning of "cap." In support of this contention, Millipore alleges that one of ordinary skill in the art would understand from the plain meaning of the claims that the cap and the elongate member can be either part of the same structure or distinct from one another. In doing so, Millipore merely recites the same arguments that it made in opposing summary judgment and therefore points to no manifest error. *Prescott v. Higgins*, 538 F.3d 32, 45 (1st Cir. 2008) ("The repetition of previous arguments is not sufficient to prevail on a Rule 59(e) motion.") (quoting *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 165 n.9 (1st Cir. 2004)).

*Second*, Millipore contends that construing the cap as being part of the same structure as the elongate member is inconsistent with Figure 2 of the '477 Patent. Millipore's contention is based mainly on the presence of a vertical line between the cap and the elongate member. However, this argument was not, yet could have been, raised by Millipore prior to the judgment. For this reason, Millipore's argument must be rejected. *Marks 3 Zet-Ernst Marks*, 455 F.3d at 16 (holding that Rule 59(e) motions do not allow a party to "advance arguments that could and should

have been presented to the district court prior to the judgment." (citation omitted).) In any event, as explained in the September 20, 2010 Memorandum and Order, the fact that "the elongate members essentially '30' and the cap '65' use the same shading patterns . . . support[s] the presumption that these two elements are part of the same structure." *Millipore*, 750 F. Supp. 2d at 263. (footnote omitted).

*Third*, Millipore contends that my construction of the structure of the cap is based on a misunderstanding of the statements made by the Examiner with regard to the Jaeger reference. The core of Millipore's argument is that, as the Examiner noted, the Jaeger device does not contain in a "single member" a cap and an opening. This feature distinguishes, as I found, the Jaeger invention from the '477 Patent. *Id.* at 264. However, in order to be able to reach that conclusion, it is necessary to focus on the opening of the elongate member, rather than on the opening of the shaft. Having now made this correction, *see* Section III.A.1 *supra*, my construction is fully consistent with the prosecution history.

Finally, but not least, Millipore's attempt to construe the cap as being detachable from the elongate member is clearly contradicted by my construction of the term "elongate member" as "a rigid and monolithic structure of extended length." *Millipore*, 750 F. Supp. 2d at 260. Accordingly, I reaffirm my

conclusion that the Accused Products do not literally infringe Claims 1 and 5 of the '477 Patent on the ground that "[n]o reasonable jury could conclude that the silicone seal and the rigid rod of the Accused Products are part of the same structure." *Id.* at 272.[4]

### B. *Doctrine of Equivalents*[5]

To justify reconsideration, Millipore also alleges that the prosecution history estoppel does not apply and that, in any event, there is ample evidence to support infringement under the doctrine of equivalents.

#### 1. Prosecution History Estoppel

Millipore contends that I misapplied legal precedent when finding that the prosecution history estoppel applied.

---

[4] As additional grounds for reconsideration, Millipore contends that I failed to address the alternative basis for literal infringement it previously presented. According to Millipore, one of ordinary skill in the art could view the tip on the end of the rigid rod as a cap. But Millipore ignores the fact that its Initial Infringement Contentions clearly identified the silicone seal in the Accused Products designated as "314" to be the cap. *See* Millipore's Initial Infringement Contentions Ex. B. Consistent with this view, Millipore declared at the summary judgment hearing held before me on September 8, 2010: "We don't consider [the tip on the end of the rigid rod], for purposes of the infringement analysis that we are conducting, to be the cap." (Tr. p. 37 ll. 13-15.) Thus, Millipore waived this argument.

[5] Millipore contends that, because "the construction in the Memorandum and Order was unforeseen and unforeseeable," it should be "permitted to address [the] doctrine of equivalents with the construction in the Memorandum and Order," including the evidence contained in the affidavit submitted by its expert, Alexander H. Slocum, Ph.D., for purposes of the motion now before me.

Specifically, Millipore claims that, because the rationale for the amendment of the '477 was to narrow the claimed universe of devices to those that have a cap meant to seal off the elongate member from the vessel, "the amendment bears no more than a tangential relation to a cap that is distinct from an elongate member." However, because the Arthun device - a device distinguished from the claimed invention during prosecution - did not have a cap at all, the amendment was not made to distinguish a device with a cap that was part of the elongate member, which is, according to Millipore, the equivalent in question.

Millipore's argument is essentially the same as those advanced prior to judgment and therefore must be rejected. As the Supreme Court held, a motion for reconsideration "may not be used to relitigate old matters." *Exxon Shipping v. Baker*, 554 U.S. 471, 486 n.5 (2008) (quoting 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1, pp. 127-128 (2d ed. 1995)). In any event, I find, contrary to Millipore's contention, that the cap amendment - regardless of whether it contemplates a cap distinct from the elongate member - does not encompass the Arthun device because the Arthun device seals off the elongate member from the vessel. Accordingly, I reaffirm the application of prosecution history estoppel and now turn to the sufficiency of the evidence under the doctrine of equivalents.

### 2. Sufficiency of Evidence under the Doctrine of Equivalents

To support its contention that there is sufficient evidence to show infringement under the doctrine of equivalents, Millipore submitted an additional affidavit from its expert, Alexander H. Slocum, Professor of Mechanical Engineering at the Massachusetts Institute of Technology. In this affidavit, Slocum states that the differences between the Accused Products and the device claimed in the '477 Patent, thus construed, are insubstantial. Slocum also contends that the silicone seal of the Accused Products performs substantially the same function in substantially the same way to obtain the same result as the claimed cap. In that respect, he notes that the difference in the structure of the claimed cap and the silicone seal, as well as the addition of a level, do not affect his conclusion.

Slocum's most recent affidavit is insufficient to establish a manifest error of law or newly discovered evidence and justify reconsideration of non-infringement under the doctrine of equivalents. Even in light of the affidavit, it does not appear the Accused Products achieve sealing in the same way as is claimed in the '477 Patent. In particular, I find, unlike Slocum, that the presence of a lever affects the way in which the sealing function is performed. In the absence of manifest error, I reaffirm my conclusion that the Accused Products do not, as a matter of law, infringe Claims 1 and 5 of the '477 Patent under

the doctrine of equivalents. *Millipore*, 750 F. Supp. 2d at 276.

### C. Construction of "Positioned Adjacent"

Finally, Millipore contends that my construction of the claim term "positioned adjacent" is erroneous. This term used in Claim 1 of the '477 Patent designates which end of the elongate member is nearest to the fluid receptacle. *See* '477 Patent col. 8 ll. 43-46 ("the elongate members having a front and a rear with the front of the elongate members being positioned adjacent a fluid receptacle").

In the September 20, 2010 Memorandum and Order, I construed the term "positioned adjacent" to mean "next to or adjoining with no intervening structure between the elongate members and the fluid receptacle." *Millipore*, 750 F. Supp. 2d at 266. Millipore contends that this term should instead be construed as "nearby" and that the addition of any further limitations is improper. In making this argument, Millipore recites the same argument it raised prior to the judgment. As explained in the Memorandum and Order, this argument is, in any event, unpersuasive because the specification of the '477 Patent requires that the elongate member stop the flow of fluid when placed in the closed position. *Id.* (citing '477 Patent col. 4 ll. 57-67 ("the elongate members 30 are . . . shaped to fit substantially *water-tight* within said shaft 26. . . . Each elongate member 30 is movable within said shaft 26 from a closed position P1 to an open position P2 such

that the release of fluid of said fluid receptacle through said port insert 10 is *frustrated* when the elongate member 30 occupies the closed position P1.")).  The thrust of Millipore's argument is that the cap, rather than the elongate member, creates a liquid tight seal, thereby supporting the existence of intervening structures between elongate members and the fluid receptacle.  Having concluded that the cap and the elongate member are part of the structure, I find this argument unpersuasive and therefore affirm my construction of the term "positioned adjacent" as "next to or adjoining with no intervening structure between the elongate members and the fluid receptacle.  *Id.*

## IV.  CONCLUSION[6]

For the reasons set forth more fully above, I DENY Millipore's motion to alter judgment and for reconsideration,

---

[6] In anticipation that I might deny Millipore's motion for reconsideration to the extent that I would not overturn the prior grant of summary judgment to Gore against Millipore's claims, both parties have suggested that I take procedural steps to ensure that the judgment would, despite Gore's counterclaims, be appealable to the Federal Circuit.  Two ways of achieving that result were suggested: (1) amending the judgment under Federal Rule of Civil Procedure 60(a) to provide that "Gore's counterclaims for invalidity and inequitable conduct are dismissed without prejudice," or (2) certifying partial summary judgment under Federal Rule of Civil Procedure 54(b) with the express statement that "there is no just reason for delay of this appeal."  To avoid complicated interlocutory review and because the counterclaims are no longer salient given allowance of Gore's summary judgment motion, amending the judgment appears to be the more appropriate course.

except as it pertains to the location of the cap vis-à-vis the opening for literal infringement purposes as discussed in Section III.A.1 *supra*.  (Dkt. No. 74.)  In addition, I will modify the September 21, 2010 judgment to reflect that Gore's counterclaims for invalidity and inequitable conduct are dismissed without prejudice.

                                              */s/ Douglas P. Woodlock*
                                              DOUGLAS P. WOODLOCK
                                              UNITED STATES DISTRICT JUDGE